MAYER BROWN LLP
ANDREW Z. EDELSTEIN (SBN 218023)
*aedelstein@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

AT&T SERVICES, INC. LEGAL DEPT.
RAYMOND P. BOLAÑOS (SBN. 142069)
*rb2659@att.com*
430 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone: (415) 268-9491
Facsimile: (415) 543-0418

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, d/b/a AT&T MOBILITY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MENIFEE, a California municipal corporation,<br><br>Defendant. | Case No. 5:20-cv-00065<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**AND**<br><br>**REQUEST FOR EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T"), a limited liability company organized and existing under the laws of Delaware, complains against Defendant City of Menifee, California (the "City") and alleges as follows:

**INTRODUCTION**

1. AT&T seeks declaratory and injunctive relief based on the City's denial of AT&T's application for a Conditional Use Permit 2018-078 (the "Application") to allow for construction and operation of a wireless communications facility designed as a 70-foot-tall clock tower (the "Proposed Facility"), to be attached to an existing multi-purpose building at Wheatfield Park, 30627 Menifee Road, Menifee, California (the "Site"). Federal law limits the ability of municipalities to block the installation of such facilities, based on nationwide goals of promoting the widespread availability of advanced, reliable wireless services.

2. AT&T has been trying for more than a year and a half to place the Proposed Facility at the Site, with a goal to provide and improve wireless services in parts of the City with inadequate wireless services. The Proposed Facility is needed to close AT&T's significant gap in its wireless service in this portion of the City. The Proposed Facility is the least intrusive means to close that significant gap.

3. The Proposed Facility will enhance the community and provide very important wireless services, including FirstNet services to support police officers, firefighters, paramedics, and other first responder communications. To that end, AT&T submitted its Application to construct the Proposed Facility concealed as a 70-foot-tall clock tower.

4. The Proposed Facility is consistent with the Menifee Municipal Code, which authorizes concealed or disguised wireless communications facilities in recreational and open space zones. The Proposed Facility was in fact supported by the City's Planning Staff, whose Staff Report to the Planning Commission provided an overall positive review of the location and aesthetics of the Proposed Facility.

5. Despite City Staff approval, and in violation of federal laws, the City denied AT&T's Application following five public hearings, based in part on misplaced concerns regarding radio frequency emissions from the Proposed Facility.

6. The City's denial of AT&T's Application violates Sections 253 and 332 of the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. §§ 253, 332. Those provisions limit the power of municipalities to regulate the deployment of telecommunications facilities and personal wireless service facilities and forbid municipalities from acting or failing to act in a manner that may prohibit or have the effect of prohibiting telecommunications and personal wireless services.

7. The City has effectively prohibited AT&T's installation of telecommunications and personal wireless service facilities within the City. The City's denial is an effective prohibition of telecommunications services and personal wireless services and is not supported by substantial evidence in a written record, in clear violation of federal law. The City also abused its discretion in denying AT&T's Application, and its actions were arbitrary and capricious.

**JURISDICTION AND VENUE**

8. This action arises under the laws of the United States, specifically the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332. The Court has jurisdiction over AT&T's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce). The Court's authority to grant declaratory relief and related injunctive relief is based upon 28 U.S.C. §§ 2201-2202 because an actual controversy exists.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because AT&T's claims stated herein arose in this judicial district.

**PARTIES**

10. Plaintiff AT&T is a limited liability company duly organized, existing, and operating under the laws of Delaware, with its principal place of business in

Atlanta, Georgia, with offices at locations throughout California. At all times relevant herein, AT&T has been and is qualified to do business in California. AT&T is a wireless telecommunications carrier that provides personal wireless services within the meaning of the Act.

11. Defendant City of Menifee is a California municipal corporation organized and existing under the laws of the State of California.

## NATURE OF THE CASE

12. By this action, AT&T seeks declaratory and injunctive relief in the form of an order compelling the City to issue forthwith a conditional use permit and all other necessary approvals and authorizations to construct, operate and maintain the Proposed Facility.

13. Declaratory and injunctive relief requested herein is necessary and appropriate because the City has violated the Act by effectively prohibiting AT&T from providing personal wireless services in Menifee.

## THE TELECOMMUNICATIONS ACT

14. "Congress enacted the *Telecommunications Act of 1996 (TCA), 110 Stat. 56*, to promote competition and higher quality in American telecommunications services and to 'encourage the rapid deployment of new telecommunications.'" *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005). "One of the means by which it sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id.*

15. The Act significantly limits the authority of state and local governments to regulate "the placement, construction, and modification of personal wireless service facilities" (47 U.S.C. § 332(c)(7)(B)) and was enacted in part to prioritize and streamline deployment of wireless technologies on a national basis. *City of Rancho Palos Verdes*, 544 U.S. at 115-16.

///

16. Congress empowered the Federal Communications Commission ("FCC") with a broad mandate to interpret provisions of the Act and to promulgate regulations. *In the Matter of Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 9088, (FCC rel. Sept. 27, 2018) (hereinafter "*Infrastructure Order*"). Consistent with the FCC's broad mandate, courts have repeatedly recognized the FCC's authority to interpret 47 U.S.C. sections 253 and 332 to clarify what types of state and local legal requirements conflict with the statutory parameters established by Congress. *City of Arlington v. Federal Communications Commission*, 668 F.3d 229, 253 (5th Cir. 2012); *RT Communications, Inc. v. Federal Communications Commission*, 201 F.3d 1264, 1268 (10th Cir. 2000).

**Effective Prohibition**

17. To facilitate the rapid deployment of telecommunications technologies, the Act imposes certain limits on the authority of local and state governments to restrict the provision of personal wireless and telecommunications services. Among those restrictions is 47 U.S.C. § 253 ("Section 253"), which provides, in relevant part, that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

18. The FCC has explained that under Section 253, a "state or local legal requirement has the effect of prohibiting telecommunications service when that legal requirement 'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Infrastructure Order*, ¶ 35. Stated differently, "an effective prohibition occurs where a [local regulation] materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id.* at ¶ 37.

19. Additionally, Section 332 prohibits a local government from denying an application for a wireless telecommunications facility where doing so would "prohibit

or have the effect of prohibiting" AT&T from providing wireless telecommunications services. 47 U.S.C. § 332(c)(7)(B)(i)(II).

20. Under the Act, a wireless carrier may install wireless service facilities if it shows there is a "significant gap" in service and the proposed installation is the "least intrusive" means of closing that gap. *See* 47 U.S.C. § 332(c)(7)(B)(i); *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009). If there is a "gap in service" and if the proposed installation is the "least intrusive means" for filling that gap, a municipality must grant the permit application. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II) (local regulations "shall not prohibit or have the effect of prohibiting the provision of personal wireless services"); *Sprint PC Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 726 (9th Cir. 2009) (explaining that denial of the permit application would violate section 332(c)(7)(B)(i)(II) of the Act if the "significant gap" and "least intrusive means" requirements were met); *City of Anacortes*, 572 F.3d at 995 (same).

21. The FCC has held that Section 332 is not limited to situations in which a wireless provider demonstrates a significant coverage gap, but also occurs when the decision of a local government materially inhibits wireless services. *See Infrastructure Order* at ¶¶ 35-42; see also, *In the Matter of California Payphone Assoc. Petition for Preemption, Etc., Opinion and Order,* 12 FCC Rcd. 14191 (FCC rel. July 17, 1997). Any analysis of an effective prohibition "focuses on the service the provider wishes to provide, incorporating the capabilities and performance characteristics it wishes to employ, including facilities deployment to provide existing services more robustly, or at a better level of quality…" *Infrastructure Order,* at n.95.

22. A local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Infrastructure Order*, ¶ 37.

**Substantial Evidence Requirement**

23. The Act also provides that local governments may only deny an application based on "substantial evidence." 47 U.S.C. § 332(c)(7)(B)(iii). The "substantial evidence" requirement means that a local government's decision must be "authorized by applicable local regulations and supported by a reasonable amount of evidence." *Metro PCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 725 (9th Cir. 2005). In other words, a local government must have specific reasons that are both consistent with the local regulations and supported by substantial evidence in the record to deny a permit.

**Radio Frequency Emissions Concerns Are Irrelevant**

24. The Act also provides that "[n]o state or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [FCC's] regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). The Act thus prohibits local decisions on wireless facility siting applications on the basis of fears over radio frequency emissions. This prohibition applies to direct or indirect regulation on such basis.

25. A wireless facility permit application thus cannot be rejected due to health concerns, whether raised explicitly or indirectly through some proxy such as property values or aesthetics. Citing Congressional intent upon passage of the Act, a federal district court in California has held that in light of the federal preemption of radio frequency emissions, "concern over the decrease in property values may not be considered as substantial evidence if the fear of property value depreciation is based on concern over the health effects caused by radio frequency emissions." *AT&T Wireless Services of California LLC v. City of Carlsbad*, 308 F.Supp.2d 1148, 1159 (S.D. Cal. 2003) (quoting H.R. Conference Report No. 104-458, 201(1996)).

///

26. Moreover, generalized expressions of concern regarding property values and aesthetics do not constitute substantial evidence to support the denial of an application seeking to install wireless telecommunications facilities. *See California RSA No. 4 v. Madera County*, 332 F.Supp.2d 1291, 1309 (E.D. Cal. 2003) (citing *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 409 (3d Cir. 1999).

## FACTUAL BACKGROUND

**AT&T's Need for the Proposed Facility**

27. AT&T provides personal wireless services to its customers throughout the area relevant to this Complaint pursuant to frequency licenses issued by the FCC. When AT&T identifies a significant coverage gap in its wireless service coverage, AT&T investigates the nature and extent of the need for improvement and identifies ways to close that gap.

28. AT&T has a significant service coverage gap in the City in the vicinity of the Proposed Facility. AT&T demonstrated its significant service coverage gap in the administrative proceedings by submitting its Radio Frequency Statement and other record evidence. AT&T's service coverage gap is significant because the area includes hundreds of homes, businesses, a college, a school, parks and various other points of interest in the immediate vicinity.

29. AT&T submitted radio frequency propagation maps that are exhibits to its Radio Frequency Statement to depict the service coverage gap that AT&T is experiencing throughout this portion of Menifee. These maps and other record evidence show that AT&T lacks adequate wireless service in this portion of the City, and also explain how the Proposed Facility will address that gap. Moreover, AT&T needs to construct the Proposed Facility to improve service to this portion of Menifee, including enhancing first responder communications.

30. To close the gap, AT&T proposes to install a wireless communications facility, disguised as a clock tower attached by a breezeway to the existing multi-purpose building near the center of Wheatfield Park, with twelve antennas (four

groups of three antennas), associated equipment located behind a decorative split-face wall, all designed to blend well in the park. City Staff was involved with the selection and development of this facility design.

31. AT&T thoroughly investigated alternative sites and designs to make sure its Proposed Facility was the least intrusive means for closing AT&T's service coverage gap. AT&T's analyses of alternatives were submitted to the City in connection with the Application, along with additional details about the search for candidate locations that were presented at the Planning Commission and City Council meetings. Given that residential neighborhoods surround this area, and the Menifee Municipal Code prefers sites in parks and open spaces, AT&T investigated sites at the Mt. San Jacinto College, Bell Mountain Middle School, and Wheatfield Park. Neither the college nor the middle school were interested in leasing space for the Proposed Facility. AT&T also sought permission from a property owner to the west of Interstate 215, but the property owner did not respond to AT&T and AT&T's radio frequency engineers later determined that a site there would not close AT&T's significant service coverage gap.

32. AT&T has taken care to select a location to reduce impacts to the community while maintaining a clear line-of-sight for signals to provide adequate service coverage to the gap area. And AT&T has developed a stealth design that will fully conceal the Proposed Facility while adding an amenity to the park. The Staff Report to the Planning Commission explained that Staff worked with AT&T to ensure "that the architecture of the proposed facility, including equipment enclosure, will remain consistent with the existing multi-purpose building design."

33. The Proposed Facility is consistent with the City's General Plan, the project will not require any new utility or roadway improvements, and the Site is physically suitable for the Proposed Facility.

34. Additionally, the Proposed Facility is part of AT&T's commitment to supporting public safety through its partnership with FirstNet, the federal First

Responder Network Authority. With AT&T's selection by FirstNet as the wireless service provider to build and manage the nationwide first responder wireless network, each new facility will help strengthen first responder communications. The Proposed Facility will directly support first responder communications, because AT&T proposes to install specific equipment to serve first responders over the FirstNet platform.

35. The Proposed Facility will operate well below applicable FCC radio frequency emissions limits. In connection with its application, AT&T submitted a Radio Frequency Emissions Compliance analysis and report performed by GCB Services, an independent radio frequency consulting firm. The report confirms that the Proposed Facility will operate well within (and actually far below) all applicable FCC radio frequency emissions limits. Given the compliance with FCC standards, the Application cannot be rejected based on concerns about radio frequency emissions.

36. AT&T investigated alternative sites, but none were found near enough to the coverage gap to serve as feasible alternatives. AT&T identified the proposed Site and worked closely with City Staff to develop the Proposed Facility as the best available and least intrusive means to address its coverage gap.

**The Application and Appeal**

37. On March 29, 2018, AT&T submitted its Application to the City.

38. On August 14, 2019, the City Planning Commission held a public hearing on AT&T's Application for Conditional Use Permit No. 2018-078. At the hearing, the Planning Commission heard public testimony and considered materials in its Staff Report. During the hearing, residents spoke out opposing the Proposed Facility based on perceived health concerns.

39. At the August 14, 2019 hearing, the Planning Commission instructed City Staff to prepare a resolution with denial findings for the Application and continued the public hearing until September 11, 2019.

///

40. At the September 11, 2019 public hearing, the only opponent to AT&T's Proposed Facility to speak explained that his concern about property values is linked to the emotional concerns he anticipates some people may have about radio frequency emissions. At this hearing, the Planning Commission denied the Application.

41. On September 19, 2019, AT&T filed a timely application to appeal the Planning Commission's decision (the "Appeal"), stating that the Proposed Facility would close the existing coverage gap in the area, the proposal meets the City's siting requirements, and the proposal complies with FCC rules and regulations. The appeal also explained that denial of the Proposed Facility will effectively prohibit AT&T from providing and improving wireless services to the gap area.

42. On November 6, 2019, the Menifee City Council held a public hearing on AT&T's appeal, at which hearing the City Council asked AT&T whether it could close its coverage gap by deploying small cells in lieu of a stealth macro facility. Although the City is preempted from dictating the wireless technology to be deployed, and although the request was inconsistent with the City Code, AT&T did in fact evaluate small cells as an alternative to the Proposed Facility and concluded that small cells will not address the coverage gap, and that a macro facility is needed. AT&T submitted to the record its Supplemental Radio Frequency Statement, which explains key distinctions between the use of macro facilities and small cells and concludes that small cells will not close AT&T's significant service coverage gap.

43. At the November 6, 2019 City Council meeting, the Council directed City Staff to research multiple issues including seeking further information about AT&T's significant gap in coverage and AT&T's analyses of alternatives and continued the public hearing until December 4, 2019.

44. At the December 4, 2019 public hearing, the City Council instructed City Staff to prepare a resolution with denial findings for the Appeal and Application.

45. At a December 18, 2019 City Council meeting, the City denied the Appeal and Application.

46. On December 18, 2019, the City issued a written resolution denying the Appeal and Application.

47. The City's Resolution does not contain substantial evidence supporting the City's denial of the Application.

48. At no time did the City identify any available alternative, technically feasible and less intrusive alternatives for AT&T's Proposed Facility. In fact, there are no other available sites on which AT&T can construct the Proposed Facility and remedy the significant gap in coverage.

49. Because there are no other available sites where AT&T can feasibly construct its Proposed Facility, and because the City has not identified any available, technically feasible and less intrusive alternatives by which AT&T can address its significant service coverage gap, the City has effectively prohibited AT&T from providing wireless service to its significant coverage gap.

**FIRST COUNT**
**(Effective Prohibition)**
**47 U.S.C. §§ 253, 332(c)(7)(B)(i)(II)**

50. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 49, inclusive, as though fully set forth herein.

51. AT&T has a gap in service in the vicinity of the Proposed Facility.

52. AT&T's gap in service in the vicinity of the Proposed Facility is significant.

53. The Site and the Proposed Facility are the least intrusive means to close AT&T's significant gap in service.

54. There is no other available site on which AT&T can construct the Proposed Facility and remedy its significant gap in coverage, and AT&T undertook a good faith evaluation of potential alternatives to the Proposed Facility.

55. At no time did the City identify any available, technically feasible and less intrusive alternative sites on which AT&T could construct the Proposed Facility.

56. The Proposed Facility would remedy AT&T's significant service coverage gap in the vicinity of the Site by means that are the least intrusive to the values protected by the Menifee Municipal Code.

57. The City did not present evidence establishing that AT&T does not have a significant gap in its personal wireless service coverage.

58. The City did not present evidence establishing that the Site is not the least intrusive means to address AT&T's significant service coverage gap.

59. The City's decision to deny the Application prohibits or has the effect of prohibiting AT&T from providing personal wireless services in the significant gap area.

60. Accordingly, the City violated the Act, 47 U.S.C. §§ 253, 332(c)(7)(B)(i)(II).

**SECOND COUNT**
**(Substantial Evidence Requirement)**
**47 U.S.C. § 332(c)(7)(B)(iii)**

61. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 60, inclusive, as though fully set forth herein.

62. The Application for the Proposed Facility satisfied all of the criteria set forth in the Menifee Municipal Code.

63. AT&T presented evidence to the City justifying the need for the Proposed Facility, as well as the need for a Conditional Use Permit.

64. The City's decision to deny the Application was not supported by substantial evidence contained in a written record as required by Section 332(c)(7)(B)(iii).

65. Accordingly, the City violated the Act, 47 U.S.C. § 332(c)(7)(B)(iii).

/ / /

/ / /

/ / /

# THIRD COUNT
## (Improper Regulation of Radio Frequency Emissions)
### 47 U.S.C. § 332(c)(7)(B)(iv)

66. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 65, inclusive, as though fully set forth herein.

67. The Act provides that "[n]o state or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications] Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). In this way, the Act prohibits local decisions on wireless facility siting applications on the basis of fears regarding radio frequency emissions. This prohibition applies to direct or indirect regulation on such basis.

68. The Proposed Facility will operate well below applicable FCC radio frequency emissions limits.

69. The City's denial of the Application on the grounds that the Proposed Facility would "degrade the overall aesthetic quality," after multiple residents testified about their concerns with radio frequency emissions, was improper as an indirect regulation based on the perceived effects of radio frequency emissions. The City's action violated the Act.

70. The City's actions were arbitrary and capricious, exceeded its authority, and constituted an abuse of discretion.

71. Section 332(c)(7)(B)(iv) expressly preempts and invalidates any State or local regulation in violation of the provisions of Section 332(c)(7)(B)(iv).

72. Accordingly, the City violated the Act, 47 U.S.C. § 332(c)(7)(B)(iv).

## REQUEST FOR EXPEDITED REVIEW

73. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 72, inclusive, as though fully set forth herein.

74. The Act, 47 U.S.C. § 332(c)(7)(B)(v), provides that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

75. AT&T has been adversely affected by the City's denial of its Application to construct the Proposed Facility. AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the Act.

WHEREFORE, AT&T prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, AT&T prays for relief against the City as follows:

1. For a declaration and judgment that the City's denial has effectively prohibited AT&T from closing a significant coverage gap in the provision of wireless service in violation of 47 U.S.C. §§ 253, 332(c)(7)(B)(i)(II);

2. For a declaration and judgment that the City violated Section 332(c)(7)(B)(iii) of the Act because denial of the Application was not supported by substantial evidence contained in a written record;

3. For a declaration and judgment that the City has improperly regulated the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions, in violation of the Act, 47 U.S.C. § 332(c)(7)(B)(iv);

4. For a declaration and judgment that AT&T is entitled to the approval of the Proposed Facility pursuant to its Application, without conditions imposed by the City;

5. For a declaration and judgment that the City's actions are preempted by the Telecommunications Act of 1996 and are therefore void and invalid;

6. For an order mandating the following:

(a) that the City grant forthwith AT&T's Conditional Use Permit 2018-078 consistent with AT&T's Application;

(b) that the City grant forthwith all other authorizations necessary for construction of the Proposed Facility; and

(c) that the City grant forthwith final approval of the permits for construction of the Proposed Facility;

7. For expedited review of the matters set forth in this Complaint, as federal law requires;

8. For an award of AT&T's costs of suit herein; and

9. For such other and further relief as the Court may deem just and proper.

Dated: January 10, 2020

MAYER BROWN LLP
ANDREW Z. EDELSTEIN

BY: */s/Andrew Z. Edelstein*
Andrew Z. Edelstein
Attorneys for New Cingular Wireless
PCS, LLC, d/b/a AT&T Mobility